# EXHIBIT A

## Civil Cover Sheet and Class Action Complaint

## Alfredo Rita, William Ku v. Cypress Security
## San Francisco Superior Court Case No. CGC-16-549477

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Peter M. Gimbel 276327<br>Law Offices of Nadeem H. Makada<br>1340 Bayshore Highway<br>Burlingame, CA 94010<br>TELEPHONE NO: (650) 401-8812   FAX NO.: (650) 401-8817<br>ATTORNEY FOR (Name): Plaintiffs | ENDORSED<br>F I L E D<br>San Francisco County Superior Court<br><br>DEC 17 2015<br><br>CLERK OF THE COURT<br>BY: ____ MADONNA CARANTO<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Unlimited Civil

CASE NAME: Rita v Cypress et al

| CIVIL CASE COVER SHEET<br>[X] Unlimited  ☐ Limited<br>(Amount  (Amount<br>demanded  demanded is<br>exceeds $25,000) $25,000 or less) | Complex Case Designation<br>☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER: CGC-15-549477<br>JUDGE:<br>DEPT.: |
|---|---|---|

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
[X] Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is  [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action (specify): 7
5. This case [X] is  ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: December 16, 2015

Peter M. Gimbel
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
  Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
Martin Dean's
ESSENTIAL FORMS™
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Alfredo Rita

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice- Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach-Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case-Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ-Administrative Mandamus
  Writ-Mandamus on Limited Court Case Matter
  Writ-Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal-Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

Alfredo Rita

ENDORSED
F I L E D
*San Francisco County Superior Court*

DEC 1 7 2015

CLERK OF THE COURT
BY: MADONNA CARANTO
Deputy Clerk

1  Nadeem H. Makada, SB# 182736
2  Peter M. Gimbel, SB# 276327
   Law Offices of Nadeem H. Makada
3  1340 Bayshore Highway
   Burlingame, CA 94010
4  650-401-8812

5  Attorneys for Plaintiffs:
6  Alfredo Rita, William Ku, et. al.



7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    COUNTY OF SAN FRANCISCO

9

10                                         CASE # CGC 15-549477
   ALFREDO RITA, WILLIAM KU, individually and
11 on behalf of all similarly situated        CLASS ACTION

12        *Plaintiffs,*                   COMPLAINT FOR VIOLATIONS OF:

13                                        (1) CALIFORNIA LABOR CODE § 200 *et*
14            vs.                             *seq.*;
                                          (2) BUSINESS & PROFESSIONS CODE §
15                                            17200 *et seq.*;
   CYPRESS SECURITY, LLC, a California limited (3) BREACH OF CONTRACT;
16 liability company DBA CYPRESS PRIVATE    (4) BREACH OF IMPLIED GOOD FAITH
   SECURITY, and DOES 1-50,                    AND FAIR DEALING; AND
17                                          (5) CONSTRUCTIVE FRAUD
18        *Defendants.*                    (6) INTENTIONAL
                                              MISREPRESENTATION
19                                         (7) NEGLIGENT MISREPRESENTATION

20

21                                             DEMAND FOR JURY TRIAL

22                                             UNLIMITED CIVIL CASE

23

24

25 On information and belief, PLAINTIFFS allege as follows:

26 ///

27 ///

## NATURE OF THE ACTION

1.  This is a civil suit brought by ALFREDO RITA and WILLIAM KU individually and on behalf of all persons similarly situated.

2.  This is an action against CYPRESS PRIVATE SECURITY, LLC, a California Limited Liability Company doing business as CYPRESS PRIVATE SECURITY and DOES 1-50, (collectively "DEFENDANT" or "CYPRESS") for violations of Labor Code §§ 200 *et seq.* and Business & Professions Code §§ 17200 *et. seq.* Moreover, as third-party beneficiaries of any and all of DEFENDANT'S contracts with the California Department of General Services ("DGS"), an agency of the State of California, to provide private security services, PLAINTIFFS also allege a breach of said contracts.

3.  This action alleges that DEFENDANT failed to provide PLAINTIFFS, who perform work pursuant to a security guard services contract between DEFENDANT and DGS, benefits and/or cash-in-lieu payments at the level required under said contract and Government Code § 19134 ("Section 19134").

4.  As such, this action alleges the following causes of action: (1) DEFENDANT has violated and continues to violate Labor Code § 200 et seq., by failing to pay PLAINTIFFS their full wages, benefits, and/or cash-in-lieu when due; (2) DEFENDANT has engaged and continues to engage in unfair and unlawful business practices in violation of Business & Professions Code § 17200 *et. seq.*; (3) DEFENDANT has breached and continues to breach its Contract with DGS; (4) DEFENDANT has breached and continues to breach the implied covenant of good faith and fair dealing; (5) DEFENDANT has breached and continues to breach the duty owed to PLAINTIFFS resulting in constructive fraud; (6) DEFENDANT intentionally misrepresented that DGS had made a definitive ruling approving of DEFENDANT's application of Government Code § 19134 benefits; and (7) DEFENDANT negligently misrepresented that DGS had made a definitive

2

Rita v Cypress

1    ruling approving of DEFENDANT's application of Government Code § 19134 benefits.

2  5.   With these claims, PLAINTIFFS seek compensation for all unpaid or underpaid benefits and/or

3       cash-in-lieu payments, holiday pay, wage payments for monthly training, plus interest, other

4       damages as permitted by law, restitution of all benefits obtained by DEFENDANT from its

5       unlawful business practices, punitive damages, a permanent injunction, other equitable relief

6
7       permitted by law, and reasonable attorneys' fees and costs.

8                                              **PLAINTIFFS**

9  6.   Plaintiff Alfredo Rita is and at all times pertinent herein was a resident of California, County of

10      San Mateo. Plaintiff Alfredo Rita has been employed as a security guard at the Ronald M. George

11      State Office Complex located at 455 Golden Gate Ave., San Francisco, California since

12      November 2002, and has worked in that capacity for DEFENDANT since May 15, 2015. Plaintiff

13      Rita brings this action on his own behalf and on behalf of all other persons similarly situated.

14

15  7.   Plaintiff William Ku is and at all times pertinent herein was a resident of California, County of

16      San Mateo. Plaintiff William Ku has been employed as a security guard at the Ronald M. George

17      State Office Complex located at 455 Golden Gate Ave., San Francisco, California since

18      September 2009, and has worked in that capacity for DEFENDANT since May 15, 2015. Plaintiff

19      Ku brings this action on his own behalf and on behalf of all other persons similarly situated.

20

21                                             **DEFENDANTS**

22  8.   PLAINTIFFS are ignorant of the true names and capacities of DEFENDANTS sued in this

23      Complaint as DOES 1 through 50, inclusive, and therefore sue these DEFENDANTS by such

24      fictitious names and capacities. PLAINTIFFS will amend this complaint to allege

25      DEFENDANTS true names and capacities when learned. PLAINTIFFS are informed and believe

26      and thereon allege that each of the fictitiously named defendants is in breach of their contracts

27      with DGS or is tortiously or otherwise legally responsible in some manner for the occurrences

                                                    3

alleged in the Complaint and for PLAINTIFFS' damages. PLAINTIFFS will amend this Complaint to allege such responsibility when the same shall have been ascertained.

9. PLAINTIFFS are further informed and believe, and on that basis allege, that at all relevant times, each DEFENDANT, including DOES 1 through 50, inclusive, was the agent or employee and/or co-conspirator of one or more of the named DEFENDANTS, and in doing the things alleged, was acting within the scope of that agency or employment. PLAINTIFFS are further informed and believe, and on that basis allege, that some or all of the fictitiously named DEFENDANTS aided and assisted the named DEFENDANT in committing the wrongful acts alleged in this Complaint, and that PLAINTIFFS' damages were legally caused by each such DEFENDANT.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over all causes of action herein pursuant to the California Constitution, Article VI, § 10, because this case is a cause not given by statute to other trial courts.

11. This case is properly filed in Superior Court since it is a civil action wherein the relief sought is not of a type that may be granted in a limited civil case.

12. Venue is proper in this Court because the unlawful acts alleged in this Complaint occurred and continue to occur in San Francisco County.

## FACTUAL ALLEGATIONS

I. **Unpaid and/or Underpaid Benefits as per Section 19134**

13. Section 19134 provides that "[p]ersonal services contracts entered into by a state agency . . . for persons providing . . . security guard services shall include provisions for employee wages and benefits that are valued at least 85 percent of the state employer cost of wages and benefits provided to state employees for performing similar duties." Gov. Code § 19134(a).

14. Section 19134 requires the Department of Human Resources to establish annually the required wage and benefit costs for covered workers. Gov. Code § 19134(c).

4

Rita v Cypress

15. Section 19134 further provides that "[i]n lieu of providing actual benefits, contractors may comply with this section by a cash payment to employees equal to the applicable determination [by the Department of Human Resources] under [Section 19134(c)]." Gov. Code § 19134(d).

16. Moreover, Section 19134 specifies that "[f]ailure to provide benefits or cash-in-lieu to employees as required under this section shall be deemed to be a material breach for any contract for personal services covered by this section." Gov, Code § 19134(e).

17. In April 2015, DEFENDANT entered into a written agreement ("the Contract") with DGS to provide security guard services. The contract was approved April 16, 2015.  The Contract governs PLAINTIFFS' employment with DEFENDANT and is provided as an exhibit herein. (A true and correct copy of the pertinent provisions of this contract is attached hereto as Exhibit 1 and incorporated by this reference). The Contract covers the period from May 1, 2015 to April 30, 2018. (*See* Exhibit 1).

18. The Contract requires DEFENDANT to provide security guard services at the Ronald M. George State Office Complex with the following addresses: 350 McAllister Street, San Francisco, California and 455 Golden Gate Avenue, San Francisco, California. (*See* Exhibit 1).

19. The Contract expressly provides that "[Defendant] must comply with Government Code 19134 which requires the California Department of Human Resources to set the rates department must pay to individuals they employ through personal services contracts for security guard services." (*See* Exhibit 1). The Contract sets the rate at "85 [percent] of the State's salary and benefit costs for State employees performing similar duties." (*See* Exhibit 1). Additionally, the Contract defines benefits as "health, dental, vision, holidays, sick leave, vacation, and retirement." (*See* Exhibit 1). Finally, the Contract specifies that the compliance with the benefit provision can be accomplished by 1) providing actual benefits, 2) paying cash equal to the State determined blended rate, or 3) a combination of benefits and cash payment which together equal the blended

5

Rita v Cypress

rate. (*See* Exhibit 1).

20. The Contract expressly states that "Failure to comply with the provisions of [Government Code section] 19134 will be deemed a material breach of this contract, which may result in contract termination at the State's sole option." (*See* Exhibit 1).

21. DEFENDANT has consistently failed to provide benefits and/or cash-in-lieu payments at hourly rates that are equal to or greater than the rate required under Section 19134 to employees that perform security guard services pursuant to the Contract with DGS. DEFENDANT'S practice to this effect is on-going.

22. The value of failed payments by DEFENDANT as per DEFENDANT'S Contract with DGS exceeds $25,000.

## II. Misrepresentation Regarding Proper Application of Calbens Benefits Formula

23. Beginning around July, 2015 PLAINTIFF'S, and other similarly situated persons, became concerned that they were being under compensated for their services under DEFENDANT'S Contract with DGS and Gov. Code § 19134(a). On July 28, 2015, PLAINTIFF'S, and other similarly situated persons, signed and submitted a grievance to various California State employees and representatives highlighting these concerns.

24. On August 6, 2015, DEFENDANT issued a memo to all employees, including PLAINTIFFS, stating that DGS and CalHR had made a definitive ruling, which approved of DEFENDANT'S application of the CalBens calculation formula under the Contract.

25. PLAINTIFFS' information and belief, based on conversations with legal counsel at DGS, is that no such ruling has been made.

26. PLAINTIFFS relied on DEFENDANT'S representations in the memo and did not seek challenge the validity of DEFENDANT'S compensation until filing this action.

27. The value of failed payments under the Contract resulting from PLAINTIFFS' reliance on

6

Rita v Cypress

DEFENDANT's representations exceeds $25,000. DEFENDANT'S practice to this effect is on-going.

## CLASS ACTION ALLEGATIONS

28. PLAINTIFFS bring this action on their own behalf and on behalf of all persons similarly situated. The class that PLAINTIFFS represent is composed of any and all CYPRESS security guard employees currently working, or having previously worked, for CYPRESS. The Class collectively seeks DEFENDANT'S to fulfill contractual duties set out in any and all security guard services contracts between DEFENDANT and DGS and any and all security guard services contracts between DEFENDANT and PLAINTIFFS. This putative class will be referred to herein collectively as CYPRESS SECURITY GUARDS.

29. The CYPRESS SECURITY GUARDS are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action, rather than in individual actions, will benefit the parties and the court.

30. There is a well-defined community of interest in the questions of law involving and affecting CYPRESS SECURITY GUARDS in that DEFENDANT, on a class-wide basis, violated the same sections of the California Labor Code, Government Code and Business & Professions Code, as well as breaching the same terms of DEFENDANT'S contract with DGS, and engaged in constructive fraud and intentional misrepresentation as to all members of the class.

31. There is a well-defined community of interest in the questions of fact involving and affecting CYPRESS SECURITY GUARDS in that:

    a. DEFENDANT has a uniform policy of promising to provide wages, benefits, and/or cash-in-lieu benefits; and

    b. DEFENDANT has a uniform policy of failing to pay all wages, Gov. Code § 19134 benefits, and/or cash-in-lieu benefits due to similarly situated security

7

Rita v Cypress

guards.

32. These questions of law and fact predominate over questions that affect only individual class members.

33. PLAINTIFFS' claims alleged herein are typical of those of the class that could be alleged by other similarly situated CYPRESS SECURITY GUARDS working for DEFENDANT pursuant to DEFENDANT'S contract with DGS in that DEFENDANT has and continues to engage in a pattern and practice of treating all similarly situated CYPRESS SECURITY GUARDS in the same fashion regarding the claims sought herein. Moreover, the relief sought is typical of the relief that would be sought by each of the similarly situated CYPRESS SECURITY GUARD in separate actions.

34. PLAINTIFFS, through their counsel, will fairly and adequately represent and protect the interests of the proposed class of employees.

35. The prosecution of separate actions by individual CYPRESS SECURITY GUARDS would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, would establish incompatible standards of conduct for DEFENDANT, and would result in the impairment of rights of employees and the disposition of their interests through actions to which they were not parties.

36. A single class action is superior to numerous individual actions as a means of adjudicating those claims.

## FIRST CAUSE OF ACTION

(By PLAINTIFFS for Failure to pay full wages when due under Cal. Labor Code§§ 200 et. seq. against DEFENDANT)

37. PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1- 36.

38. By failing to compensate employees, as required by Government Code Section 19134, as fully set

8

Rita v Cypress

forth above, DEFENDANT has violated and continues to violate Labor Code Section 204, which requires employers, including DEFENDANT, to pay their employees their full wages when due.

39. By failing to compensate employees, as required by Section 19134, DEFENDANT has willfully failed to make timely payment of full wages due to its employees who quit or have been discharged, and thereby has violated Labor Code Sections 201 and 202.

40. As a result of said violations, PLAINTIFFS have been damaged in an amount according to proof but exceeding $25,000.

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

### SECOND CAUSE OF ACTION

(By PLAINTIFFS for Unfair/Unlawful Business Practices against DEFENDANT)

41. PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1- 40.

42. By engaging in the above alleged business practices in violation of Section 19134 and Labor Code Section 201, 202, and 204, DEFENDANT has engaged and continues to engage in unfair and unlawful business acts and practices in violation of Business & Professions Code Section 17200 *et. seq.*

43. Unless enjoined, DEFENDANT will continue to engage in the unlawful and unfair business practices complained of herein.

44. As a result of said business practices, PLAINTIFFS have been damaged in an amount according to proof but exceeding $25,000.

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

### THIRD CAUSE OF ACTION

(By PLAINTIFFS for Breach of Contract against DEFENDANT)

9

Rita v Cypress

45. PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1- 44.

46. PLAINTIFFS are informed and believe that DGS has performed all of its obligations and/or satisfied all conditions under the Contracts between DEFENDANT and DGS. Additionally, PLAINTIFFS are informed and believe that DEFENDANT is not excused from full performance of its duties under the Contracts.

47. The Contract between DEFENDANT and DGS is governed by Government Code Section 19134. Section 19134(a) provides that employees working under covered contracts shall be provided with "wages and benefits that are valued at least 85 percent of the state employer cost of wages and benefits provided to state employees for performing similar duties." Section 19134(e) further provides that contractors shall be deemed in material breach if they fail "to provide benefits or cash-in-lieu to employees as required under this section." As a condition of this contract, DEFENDANT agreed to comply with Section 19134 and to provide its employees who provide covered services with benefits and/or cash-in-lieu payments at the rates specified in the contract.

48. PLAINTIFFS are individuals who perform covered services pursuant to the Contracts between DEFENDANT and DGS. As such, PLAINTIFFS are third-party beneficiaries of the Contracts between DEFENDANT and DGS.

49. DEFENDANT has failed and refused, and continues to fail and continues to refuse, to provide PLAINTIFFS, who perform services pursuant to DEFENDANT'S Contract with DGS, the benefits and/or cash-in-lieu required by (1) Section 19134 and (2) DEFENDANT'S Contract with DGS. Consequently, DEFENDANT has breached the Contract without justification or excuse. As a result of said breach, PLAINTIFFS have been damaged in an amount according to proof but exceeding $25,000. Specifically, the difference between the amount paid by DEFENDANT to PLAINTIFFS and the amount owed to PLAINTIFFS as required by (1) Section 19134 and (2) DEFENDANT'S Contracts with DGS is due and payable under the Contract.

10

Rita v Cypress

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of 20 them, as more fully set forth below.

## FOURTH CAUSE OF ACTION

(By PLAINTIFFS for Breach of Implied Covenant of Good Faith and Fair Dealing against DEFENDANT)

50. PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1- 49.

51. As a party to the DGS Contract, DEFENDANT had a duty to do everything that the Contract obligates the DEFENDANT to do to accomplish the Contract's purpose, including payment to PLAINTIFFS of benefits and/or cash-in-lieu.

52. DEFENDANT breached the implied covenant of good faith and fair dealing by failing to cooperate with PLAINTIFFS in the performance of the Contract, including DEFENDANT'S continuing failure to pay PLAINTIFFS the benefits and/or cash-in-lieu.

53. As a result of said breach, PLAINTIFFS have been damaged in an amount according to proof but exceeding $25,000.

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

## FIFTH CAUSE OF ACTION

(By PLAINTIFFS for Constructive Fraud against DEFENDANT)

54. PLAINTIFF incorporates by reference, as though fully set forth, paragraphs 1-53.

55. Based upon the particular duties that arise under DEFENDANT'S Contract with DGS, a special and/or fiduciary relationship exists between PLAINTIFFS and DEFENDANT.

56. DEFENDANT'S receipt and administration of wages and Section 19134 benefits due to PLAINTIFFS from DGS establish DEFENDANT as trustee over such funds. DEFENDANT, as trustee of funds received from DGS due to PLAINTIFFS, is responsible for proper calculation

11

and payment of wages and benefits

57. By continually failing to pay and disclose an explanation and manner of calculation of PLAINTIFFS' benefits and/or cash-in-lieu under the terms of Section 19134 and DEFENDANT'S Contract with DGS, DEFENDANT has breached its special and/or fiduciary relationship with PLAINTIFFS.

58. DEFENDANT'S failure to pay benefits and/or cash-in-lieu resulted in a financial and informational business advantage over PLAINTIFFS.

59. PLAINTIFFS justifiably relied upon the representation by DEFENDANT that PLAINTIFFS would be paid their full wages, benefits and/or cash-in-lieu consistent with the terms and conditions of the Contract.

60. As a result of DEFENDANT'S fraudulent conduct, PLAINTIFFS have been damaged in an amount according to proof but exceeding $25,000.

61. Additionally, because of DEFENDANT'S ongoing fraudulent conduct, PLAINTIFFS pray for punitive damages in an amount to be determined by the Court.

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

<u>SIXTH CAUSE OF ACTION</u>

(By PLAINTIFFS for Intentional Misrepresentation against DEFENDANT)

62. PLAINTIFF incorporates by reference, as though fully set forth, paragraphs 1-61.

63. PLAINTIFF claims that DEFENDANT made a false representation that harmed PLAINTIFF.

64. In a memo dated August 6, 2015, DEFENDANT'S represented to PLAINTIFFS that DEFENDANT'S had special knowledge concerning the amount of benefits and/or cash-in-lieu payable under DEFENDANT'S contract with DGS stemming from a definitive decision on the

12

Rita v Cypress

1  subject.

2  65. In the August 6, 2015 memo, DEFENDANT'S represented that all benefits and/or cash-in-lieu

3
4      were properly accounted for according to the definitive ruling by DGS. This representation was

5      made not as a casual expression of belief, but as an unambiguous statement of truth.

6  66. In fact, PLAINTIFFS are informed and believe that DGS made no such definitive ruling

7      regarding DEFENDANT'S compensation practices meaning DEFENDANT'S memo was issued

8      with knowingly false information or with reckless disregard for truth.

9  67. DEFENDANT'S intended PLAINTIFFS to rely on the representations contained in the memo

10     such that they would not question the amount of their benefits further.

11
12 68. PLAINTIFFS reasonably relied on the information contained in DEFENDANT'S memo dated

13     August 6, 2015.

14 69. As a result of DEFENDANT'S fraudulent conduct, PLAINTIFFS have been damaged in an

15     amount according to proof but exceeding $25,000.

16 70. Additionally, because of DEFENDANT'S intentional misrepresentation, PLAINTIFFS pray for

17     punitive damages in an amount to be determined by the Court.

18
   WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more
19
   fully set forth below.
20

21                          SEVENTH CAUSE OF ACTION

22          (By PLAINTIFFS for Negligent Misrepresentation against DEFENDANT)

23 71. PLAINTIFF incorporates by reference, as though fully set forth, paragraphs 1-70.

24 72. In the alternative, PLAINTIFF claims THEY where harmed because DEFENDANT negligently

25     misrepresented a fact.

26
27 73. In a memo dated August 6, 2015, DEFENDANT'S represented to PLAINTIFFS that

       DEFENDANT'S had special knowledge concerning the amount of benefits and/or cash-in-lieu

                                          13
   Rita v Cypress

payable under DEFENDANT'S contract with DGS stemming from a definitive decision on the subject.

74. In the August 6, 2015 memo, DEFENDANT'S represented that all benefits and/or cash-in-lieu were properly accounted for according to the definitive ruling by DGS. This representation was made not as a casual expression of belief, but as an unambiguous statement of truth.

75. In fact, PLAINTIFFS are informed and believe that DGS made no such definitive ruling regarding DEFENDANT'S compensation practices meaning DEFENDANT had no reasonable grounds for believing the contents of their memo to be true.

76. DEFENDANT'S intended PLAINTIFFS to rely on the representations contained in the memo such that they would not question the amount of their benefits further.

77. PLAINTIFFS reasonably relied on the information contained in DEFENDANT'S memo dated August 6, 2015.

78. As a result of this reliance, PLAINTIFFS have been wrongfully undercompensated for benefits and/or cash-in-lieu payments required under DEFENDANT'S contract with DGS.

79. As a result of DEFENDANT'S fraudulent conduct, PLAINTIFFS have been damaged in an amount according to proof but exceeding $25,000.

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

### JURY TRIAL DEMAND

PLAINTIFFS hereby demand a jury trial on all issues as to which a jury trial is available.

### PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS pray for the following relief:

1.  A permanent injunction requiring DEFENDANT to cease and desist from engaging in the unlawful conduct and unfair business practices complained of above;

14

Rita v Cypress

2.  A monetary award for back pay and/or restitution to PLAINTIFFS of the difference between the amount paid to PLAINTIFFS and the amount owed under Section 19134 and/or DEFENDANT'S Contracts with DGS, in an amount to be established by proof at trial but believed to exceed $25,000;

3.  Waiting time penalties on monies due upon termination to employees who quit or have been discharged, as provided for by Labor Code Section 203, Section 218, and Section 2699;

4.  Penalties for failure to pay employees their full wages when due, as provided for by Labor Code Section 210, Section 218, and Section 2699;

5.  Punitive damages as may be determined by this Court;

6.  All other appropriate equitable relief authorized by Business & Professions Code Section 17203;

7.  Prejudgment interest on all sums awarded at the rate of ten percent (10%) per annum from the date each wage payment was due to the date of judgment herein, pursuant to Labor Code Section 218.6 and Civil Code Section 3289;

8.  Attorney's fees, statutory costs and litigation expenses in an amount the Court determines to be reasonable, pursuant to Labor Code Section 218.5, Section 2699 and/or Code of Civil Procedure Section 1021.5;

9.  Such other and further relief as is equitable, just, and proper.

DATED: DECEMBER 16, 2015

Peter M. Gimbel, Esq
Law Offices of Nadeem Makada

# EXHIBIT 1

**STANDARD AGREEMENT**
STD 213 (Rev 06/03)

| | |
|---|---|
| AGREEMENT NUMBER | 3179570 |
| REGISTRATION NUMBER | eP 1410876 |

1. This Agreement is entered into between the State Agency and the Contractor named below:

   STATE AGENCY'S NAME

   Department of General Services, Real Estate Services Division, Building and Property Management Branch

   CONTRACTOR'S NAME

   Cypress Security, LLC

2. The term of this Agreement is:  May 1, 2015        through     April 30, 2018
   Or upon approval by DGS/OLS, whichever is later

3. The maximum amount of this Agreement is:  $5,612,668.08
   Five million, six hundred twelve thousand, six hundred sixty-eight dollars and eight cents.

4. The parties agree to comply with the terms and conditions of the following exhibits which are by this reference made a part of the Agreement.

| | |
|---|---|
| Exhibit A – Scope of Work | 8 Pages |
| Exhibit A  - Attachment1, Post Orders | 1 Page |
| Exhibit B – Budget Detail and Payment Provisions | 2 Pages |
| Exhibit B – Attachment 1, Cost Sheet | 1 Page |
| Exhibit B – Attachment 2, Employee Benefits Compliance Requirement | 2 Pages |
| Exhibit C* – General Terms and Conditions | GTC -610 |
| Exhibit D – Additional Provisions | 4 Pages |

Items shown with an Asterisk (*), are hereby incorporated by reference and made part of this agreement as if attached hereto.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto.

| CONTRACTOR | California Department of General Services Use Only |
|---|---|
| CONTRACTOR'S NAME (if other than an individual, state whether a corporation, partnership, etc.)<br>Cypress Security, LLC | |
| BY (Authorized Signature)          DATE SIGNED (Do not type)<br>✗                                      4  8  15 | APPROVED |
| PRINTED NAME AND TITLE OF PERSON SIGNING<br>Kes Narbutas, Chief Executive Officer | APR 1 6 2015 |
| ADDRESS<br>478 Tehama Street, San Francisco, CA 94103 | OFFICE OF LEGAL SERVICES |
| **STATE OF CALIFORNIA** | DEPT. OF GENERAL SERVICES |
| AGENCY NAME<br>Department of General Services, Real Estate Services Division, Building and Property Management | |
| BY (Authorized Signature)          DATE SIGNED(Do not type)<br>✗                                      4/13/15 | |
| PRINTED NAME AND TITLE OF PERSON SIGNING<br>Dianne Hill, Branch Chief | ☐ Exempt per: |
| ADDRESS<br>1304 O Street, 3rd Floor, Sacramento, CA 95814 | |

## EXHIBIT A

## SCOPE OF WORK

1. **PROJECT SUMMARY**

   A. The State of California, Department of General Services (DGS), Real Estate Services Division, Building and Property Management (BPM) is procuring Security Guard services at a class A building, using various access control methods, i.e. photo identification, proximity card access system, and a loading dock screening program. The site uses the following three (3) security classifications: Security Guard, Security Supervisor, and Security Manager.

   B. The building is located as follows:

   > Ronald M. George State Office Complex (RMGSOC)
   > 4455 Golden Gate Avenue/350 McAllister Street
   > San Francisco, CA 94102

2. **TERM**

   The term of this Agreement shall be for three (3) years. The rates specified in Exhibit B, Attachment 1 Cost Sheet will be in effect for the entire agreement term.

3. **PROJECT REPRESENTATIVES**

   | State Agency: | Department of General Services, Real Estate Services Division, Building and Property Management Branch |
   |---|---|
   | Name and Title: | Samuel Flores, Office Building Manager III |
   | Address: | 455 Golden Gate Avenue Suite 2600 |
   | City, State, Zip: | San Francisco, CA 94102 |
   | Phone: | 415-703-4100 |
   | E-Mail | Sam.flores@dgs.ca.gov |

   | Contractor: | Cypress Security LLC |
   |---|---|
   | Name and Title: | Jonas Tegnerud, Chief Operating Officer |
   | Address: | 478 Tehama Street |
   | City, State, Zip: | San Francisco, CA 94103 |
   | Phone: | 415-240-4502 |
   | E-Mail | Jonas.Tegnerud@cypress-security.com |

4. **PERFORMANCE**

A. Performance shall start no later than five (5) business days, or on the express date set by BPM and Cypress Security LLC (Contractor), after all approvals have been obtained and the agreement is fully executed. Should the Contractor fail to commence work at the agreed upon time, BPM upon five (5) days written notice to the Contractor, reserves the right to terminate the agreement.

B. Contractor shall provide unarmed, uniformed Security Guard services Sunday through Saturday, 24 hours/7 days a week/365 days a year. Twenty-four (24) hour Security Guard services are to be provided during all holidays.

C. Contractor shall provide an appropriate number of security guards as specified in Exhibit A, Attachment 1, Post Orders. The numbers listed are approximate and are provided for informational purposes. Contractor shall proceed with providing services as increased and decreased, when requested by the Building Manager/Designee, and submitted in writing.

D. In performance of this agreement, the Contractor shall provide unarmed, uniformed security guards with three (3) years' experience in each of the following:

    1) Providing security services to a class "A" high rise office building (Most prestigious building competing for premier office users with rents above average for the area. Buildings have high quality standard finishes, state of the art systems, exceptional accessibility and a definite market presence) consisting of 750,000 or more square feet including the following:

        i. Building is populated by multi-tenants (multi-organizations or various types of business tenants) and high level officials (such as Legislative Members, Chief Counsels Judges, District Attorney, Executive Board Members, Mayors, etc.),

        ii. Experience working with and/or coordinating security response services with public law enforcement agencies.

    2) Providing photo identification screening of at least 600 or more employees daily.

    3) Providing visual, x-ray station, magnetometer and wand screening of at least 300 visitors daily to include the following:

        i. Operating a proximity card access system.

        ii. Monitoring or operating a Fire Control Center with the following equipment or state approved equal:

            a. Intellex DV 16000 Digital Video Management System

            b. Siemens Fire and Life Safety System

            c. Pelco CM9760 KBD Intelligent Video Keyboard

            d. Firefighters Fan/Damper Override Control panel

            e. Cerebus Fire Control Announcer

     f.  Building wide fire annunciator panel with public announcement features.

   4)  Operating a loading dock screening program with PC access for a dock with a minimum of 20 vehicles per day. The screening program is to have included visual, x-ray station, magnetometer, and wand screening of all visitors, contractors, vendors, tools, equipment, and packages including UPS, USPS, and FEDEX. It will also have included a visual inspection of each vehicle prior to entry into the loading dock.

E. Guards must have, at the time of assignment, current registration cards issued by the California Department of Consumer Affairs, Bureau of Collection and Investigative Services. All Guards assigned to work under this Agreement must be in good physical condition for the work they are to perform. Guards must be fully capable of performing work requiring moderate to arduous physical exertion under either normal or emergency conditions. Guards must be mentally alert and capable of exercising good judgment, implementing instructions, and assimilating necessary specialized training. Guards shall possess good distance vision in each eye, corrected to 20/30 on the Snellen Chart. Any hearing loss cannot exceed either 30 decibels in both ears, or 35 decibels in the poorer ear.

F. Guards must possess a United States high school diploma or G.E.D equivalent and have the ability to speak, read and write the English language; can understand and carry out oral and written directions; can write accurate and clear reports in the English language, and be able to monitor environmental and electronic security systems.

G. Prior to their initial assignment, Guards are required to have received, in addition to any Department of Consumer Affairs required training, training in security and emergency procedures, crowd control, and public relations.

H. All Guards must pass and show proof of a Department of Justice clearance before beginning work under this contract at the RMGSOC building.

I. Parking is *NOT* provided at the RMGSOC or by the State. Security Guards will need to make their own personal parking arrangements. However, offloading of equipment and materials may be performed at the building's loading dock if permission is obtained in advance from the Building Manager or State's designated representative.

J. Contractor shall notify the Building Manager or State's designated representative of any necessary utilities that will be required in the performance of the work. Water, electricity, elevator and restroom facilities are available free of charge. However, these facilities shall be kept clean at all times and are not to be used for anything other than their intended purpose.

K. Contractor shall make provisions to accomplish the work of this Agreement without undue interference with the operations of the State, its tenants and visitors, or surrounding businesses and buildings.

L. BPM may require additional services, including additional Guards needed during construction or repair projects, and special events, including but not limited to, the San Francisco Opera event season. Contractor shall provide additional Guard shifts, as needed for these events, construction and repairs, at the standard Hourly Rates, and shall not bill the State for these additional shifts as "overtime" hours.

   1) Contractor shall use its billing rates as listed on Exhibit B, Attachment 1 Cost Sheet for these types of service on its invoices, and shall separately list **any** additional services with a specific description of the Guards provided, the specific date(s), and specifically why these Guards were required (what Event, repair, construction, etc.). All such additional services must be pre-approved in writing by the Building Manager or State designated representative, and a copy of the signed approval must be submitted with the invoice, or it will not be paid.

   2) Contractor is entitled to claim holiday and overtime rates only in the event it pays its employee overtime and holiday rates for those times Contractor claims such rates. All such overtime and holiday pay must be pre-approved in writing by the Building Manager or State designated representative, and a copy of the signed approval must be submitted with the invoice, or it will not be paid. In no event will Contractor charge overtime if Contractor fails to meet staffing obligations outlined in the Contract.

   3) Overtime (as defined by the Division of Labor Standards Enforcement) will be credited on a one-quarter of an hour basis with a full quarter hour credit to be granted if half or more of the period is worked. In order to provide a consistent means of calculating time expended, the following time increments will govern overtime compensation:

| Actual overtime worked in minutes | Overtime compensation in fraction of hour |
|---|---|
| 0 to 7 | None |
| 8 to 22 | .25 |
| 23 to 37 | .50 |
| 38 to 52 | .75 |
| 53 to 60 | 1.00 |

   4) The State holiday schedule may be subject to change; however, the current State holidays are New Year's Day, Martin Luther King, Jr. Day,

President's Day, Cesar Chavez Day, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, day after Thanksgiving, and Christmas Day.

## 5. DESCRIPTION OF WORK

A. This Contract will require the following categories of security:

1) **Security Guard :** Typical duties include, but are not limited to:
   i. Monitoring the entry and exit of personnel at the facility
   ii. Inspecting the facility to ensure doors, windows, and roofs are secure
   iii. Protection of State property and theft prevention by physical presence while making security checks throughout the facility and grounds
   iv. Reporting unusual conditions to the proper personnel, including law enforcement
   v. Maintaining security logs, writing reports, and notifying the appropriate client agency personnel and California Highway Patrol.
   vi. Performing visual, x-ray station, magnetometer and wand screening of all visitors
   vii. Operate complex computer system for fire, intrusion, and other types of alarm systems

2) **Security Guard Supervisor (SGS):** Typical duties include, but are not limited to:
   viii. Ensuring that staffing levels are met
   ix. Ensuring that security staff arrive on time and are prepared to begin work
   x. Observing the security guards' work habits, appearance, overall performance and verifying applicable patrol.

3) **Security Guard Manager (SGM):** The Security Guard Manager may perform all of the functions of the Supervisor and is responsible for the Contractor's performance under the terms of this Contract.

B. The Building Manager/Designee will establish the actual deployment and duties of all levels of guards to meet the security staffing needs, i.e. post orders, for the site. Post Orders for RMGSOC are included as Exhibit A, Attachment 1.

C. At all times, the Guards shall be familiar with, but not limited to, the following specific post instructions:
   1) Emergency telephone numbers
   2) Emergency fire and fire alarm procedures

3) Emergency intrusions alarm procedures
4) Floor plans (location of alarms and alarmed doors)
5) Medical emergencies
6) Elevator emergencies/malfunctions
7) Bomb threats
8) Earthquakes
9) Active Shooter
10) Biological and Chemical threats and incidents
11) Access Control
12) Deliveries
13) Equipment removal policy and procedures
14) Building patrol procedures
15) Life/safety systems.
16) Interdiction Procedures
17) X-Ray Machine
18) Wand Screening
19) Magnetometer Screening
20) Operation of the building's Public Address System at any time including emergency and evacuations of the building

D.   The Contractor will provide all guards with uniforms. All Guards will be uniformed in navy blue overcoat, when necessary, navy blue blazer or black paramilitary sweater, charcoal gray pants, uniform tie, black shoes, and white uniform shirt. Guards must wear their name tag on their uniform while on duty. All uniform and auxiliary equipment must be approved by the State. Any changes in the uniform style or color shall be approved by the State and provided by Contractor at no additional cost to the State, and at no expense to the individual employee. All uniform markings, patches and colors shall be distinctive from uniforms worn by local law enforcement personnel. Skirts are not permitted.

E.   Contractor shall ensure that all assigned Guards meet the following standards of conduct and appearance:

1) Maintain clean and neat appearance and a courteous attitude.

2) Guards shall keep their uniforms in good condition, cleaned and pressed, and shall wear a complete uniform at all times while on duty.

3) Guards shall demonstrate proficiency in the performance of their duties.

4) Guards shall maintain high visibility, answer routine questions for directions and handle minor problems.

5) Contractor employees providing services under this Contact must be registered with and possess current cards from the California Department of Consumer Affairs, Bureau of Collection and Investigative Services, as a

1) Identify any exterior doors not properly secured. If the situation is of a suspicious nature, the appropriate law enforcement agency should be notified.
2) Identify any exterior doors with defective hardware which might affect building security.
3) Report any incidents or conditions affecting the safety or security of the building or occupants.
4) Report any defective exterior lights.
5) Note any areas where staff is working after hours.
6) Report unusual circumstances, suspicious persons and any other problems encountered to this appropriate law enforcement agency.
7) Assault, burglary, robbery, vandalism or any suspicious activities shall be reported to the appropriate law enforcement agency. If an emergency dial 9-911.
8) A seriously injured or ill person, i.e. heart attack, stroke, or seizure, should be reported by calling 9-911.
9) Fire or smoke: Call 9-911 and alert building occupants.
10) Electrical outages, broken pipes, smashed windows, etc., notify those persons designated by the State and request that Building & Property Management be notified in order to affect immediate repairs.
11) Contractor will complete all reports dealing with security, law violation, injury and appropriate incident reports as required.

B. The Building Manager shall be immediately notified by telephone and/or Building Radio by the Account Supervisor or Site Manager of any of the following occurrences:
   1) Any major security/safety conditions occurring in the facility, i.e. fire, felony crimes.
   2) Any employee of the Contractor (assigned to this facility) who is arrested or otherwise becomes the focus of a criminal investigation.
   3) Any and all complaints.
   4) Any criminal, observed safety, or observed health hazard at the facility which could affect the building operation.

## 8. STATE RESPONSIBILITIES
A. The State shall provide the following equipment for the Contractor's use:
   1) Building Radio
   2) Wand
   3) Flashlights
   4) Magnetometer

Security Officer, Security Officer II, Supervisor 1 or II, or Senior Supervisor. At all times while on duty, each guard must carry their current California Department of Consumer Affairs permanent registration card. Contractor is responsible for ensuring that all of its employees' required registrations, licenses, and/or permits are current at all times. Temporary cards are not acceptable.

6) Beginning at the time of assignment, all Guards must carry either a valid California Driver's license or a Department of Motor Vehicles California Identification Card, at all times, while on duty.

7) All Guards assigned to this Contract shall successfully pass a pre-employment drug screening provided by the Contractor, within six (6) months of the start of assignment, at no additional cost to the State. At a minimum, the pre-employment drug screening must identify the use of: marijuana, cocaine, heroin, amphetamines, opiates and benzodiazepines.

8) Substandard performance of any kind will not be allowed. The State reserves the right to refuse or reject any assigned Guard, who, the State's belief, fails to meet the minimum requirements as set forth in this Agreement. If a Guard is deemed unfit while on duty, the Contractor shall immediately replace that Guard with one which meets the contract requirements, no later than two hours following the notification.

6. **PROHIBITED ACTIVITIES**
   A. While on duty at the State Facility, Guards shall not:

   1) Listen to radios or any other audio medium which is not job related.
   2) Watch television.
   3) Read any materials which are not job related.
   4) Use State telephones for other than State business.
   5) Leave their area of responsibility.
   6) Entertain personal visitors.
   7) Be under the influence of illegal drugs or alcohol.
   8) Be under the influence of prescribed medications which may affect job performance.
   9) Display a discourteous, abrasive, or belligerent attitude.
   10) Sleep, nap or be inattentive.
   11) Use their personal cell phone
   12) Use any personal electronic devices including, but not limited to an; iPad; iPod, smart phone, personal computer, etc.

7. **REPORTING**
   A. Guards shall complete all security reports which are required by the State. Written activity reports are required daily. These reports are to be submitted to the Building Manager. Reports shall include, but not be limited to:

### Exhibit A, Attachment 1

## Post Orders

| Post | Day/Time | | | |
|---|---|---|---|---|
| 350 McAllister Interdiction (1) | Mon. – Fri. 0600 to 1400 | 8 | 5 | 40 |
| 350 McAllister Interdiction (1) | Mon. – Fri. 0700 to 1600 | 8 | 5 | 40 |
| Interdiction (1) | 0930 to 1730 | 8 | 5 | 40 |
| 350 McAllister Turnstile (1) | Mon. – Fri. 0700 to 0930 1200 to 1330 | | | |
| Rover | 0930 to 1200 1330 to 1500 | 8 | 5 | 40 |
| 350 McAllister Interdiction (1) | Mon. – Fri. 1500 to 2300 | 8 | 5 | 40 |
| 350 McAllister Interdiction (1) | Mon. – Fri. 2300 to 0700 | 8 | 5 | 40 |
| Swing Shift Rover | Mon. – Fri. 1500 to 2300 | 8 | 7 | 66 |
| 350 McAllister SAT & SUN Day | 0700 to 1500 | 8 | 2 | 16 |
| 350 McAllister SAT & SUN Swing | 1500 to 2300 | 8 | 2 | 16 |
| 350 McAllister SAT & SUN Night | 2300 to 0700 | 8 | 2 | 16 |
| 455 Golden Gate Interdiction (2) | Mon. – Fri. 0700 to 1500 | 16 | 5 | 80 |
| 455 Golden Gate Interdiction (1) | Mon. – Fri. 0730 to 1730 | 10 | 5 | 50 |
| 455 Golden Gate Turnstile (1) | Mon. – Fri. 0700 to 0930 | | | |
| Rover | 1200 to 1330 0930 to 1200 | 8 | 5 | 40 |
| 455 Golden Gate Interdiction (1) | Mon. – Fri. 1500 to 2300 | 8 | 5 | 40 |
| 455 Golden Gate Interdiction (1) Night/Rover | Mon. – Fri. 2300 to 0030 0030 to 0700 | 8 | 5 | 40 |
| 455 Golden Gate SAT & SUN (Day) | 0700 to 1500 | 8 | 2 | 16 |
| SAT & SUN (Day) Rover | 0700 to 1500 | 8 | 2 | 16 |
| 455 Golden Gate SAT & SUN (SW) | 1500 to 2300 | 8 | 2 | 16 |
| 455 Golden Gate | 2300 to 0030 0030 to 0700 | 8 | 2 | 16 |
| Fire Control Center | 0000 to 0000 | 24 | 7 | 168 |
| Loading Dock | Mon. – Fri. 0700 to 1800 | 11 | 5 | 55 |
| Loading Dock | Mon. – Fri. 0800 to 1600 | 8 | 5 | 40 |
| SUPERVISORS | Mon. – Fri. Day | 30 | 5 | 150 |
| SITE MANAGER | Day/Night | 8 | 5 | 40 |
| | | | Total Hours | 1111 |

## EXHIBIT B

### BUDGET DETAIL AND PAYMENT PROVISIONS

1. **INVOICING AND PAYMENT**

   A. For services satisfactorily rendered, and upon receipt and approval of the invoices, the State agrees to compensate the Contractor in accordance with the rates specified in Exhibit B, Attachment 1, Cost Sheet.

   B. Invoices shall be submitted monthly in arrears of the service performed and must be submitted with the Contractor's letterhead information, signed by an authorized representative.

   C. Invoices will include, as applicable:

      1) Contract Number
      2) Date of Invoice
      3) Month of Service
      4) Location of Service
      5) Dates and itemized list of additional hourly services
      6) Contractor's Federal Identification Number
      7) Applicable rate and total dollar amount
      8) Contact phone number for billing questions

   D. Contractor shall send invoices, billings and other correspondence related to Contractor's services to:

      Department of General Services
      Program Support Accounting Section
      Attention: Accounts Payable - BPM
      707 3rd Street, Suite 1-120
      West Sacramento, CA 95605

   E. Should an invoice be disputed, Contractor will correct any/all disputed items on the invoice and resubmit the invoice as indicated above. Failure to provide and resubmit corrected invoice will result in a delay of payment. Under no circumstances will a credit memo be accepted in lieu of a corrected invoice.

2. **BUDGET CONTINGENCY CLAUSE**

   A. This contract is valid and enforceable only if sufficient funds are made available by the Budget Act of the appropriate fiscal year for the purpose of this program.

   B. It is mutually agreed that if the Budget Act of the current year and/or any subsequent years covered under this Agreement does not appropriate sufficient

funds for the program, this Agreement shall be of no further force and effect. In this event, the State shall have no liability to pay any funds whatsoever to the Contractor or to furnish any other considerations under this Agreement and the Contractor shall not be obligated to perform any provisions of this Agreement.

C. If funding for any fiscal year is reduced or deleted by the Budget Act for purposes of this program, the State shall have the option to either cancel this Agreement with no liability occurring to the State, or offer an Agreement Amendment to the Contractor to reflect the reduced amount.

D. This contract is subject to any additional restrictions, limitations or conditions enacted by the Legislature that may affect the provisions, terms or funding of this contract in any manner.

## 3. PROMPT PAYMENT CLAUSE

A. Payment will be made in accordance with, and within the time specified in, Government Code Chapter 4.5, commencing with section 927.

## 4. CONTRACTOR OVERPAYMENTS

A. If the State determines that an overpayment has been made to the Contractor, the State will seek recovery immediately upon discovery of the overpayment by: (a) calling the Contractor's accounting office to request a refund of the overpayment amount, or (b) offsetting subsequent Contractor payments by the amount of the overpayment if Contractor repayment or credit is not received within thirty (30) days from the date of notice.

B. If Contractor discovers it has received an overpayment, Contractor must notify the State and refund the overpayment immediately.

funds for the program, this Agreement shall be of no further force and effect. In this event, the State shall have no liability to pay any funds whatsoever to the Contractor or to furnish any other considerations under this Agreement and the Contractor shall not be obligated to perform any provisions of this Agreement.

C. If funding for any fiscal year is reduced or deleted by the Budget Act for purposes of this program, the State shall have the option to either cancel this Agreement with no liability occurring to the State, or offer an Agreement Amendment to the Contractor to reflect the reduced amount.

D. This contract is subject to any additional restrictions, limitations or conditions enacted by the Legislature that may affect the provisions, terms or funding of this contract in any manner.

3. **PROMPT PAYMENT CLAUSE**

   A. Payment will be made in accordance with, and within the time specified in, Government Code Chapter 4.5, commencing with section 927.

4. **CONTRACTOR OVERPAYMENTS**

   A. If the State determines that an overpayment has been made to the Contractor, the State will seek recovery immediately upon discovery of the overpayment by: (a) calling the Contractor's accounting office to request a refund of the overpayment amount, or (b) offsetting subsequent Contractor payments by the amount of the overpayment if Contractor repayment or credit is not received within thirty (30) days from the date of notice.

   B. If Contractor discovers it has received an overpayment, Contractor must notify the State and refund the overpayment immediately.

Building and Property Management
Security Guard Services RMGSOC 2015
3179570; Exhibit B Attachment 1; Page 1 of 1

## EXHIBIT B, ATTACHMENT 1

## COST SHEET

| Classification | Hourly Rate* | Overtime and Holiday Hourly Rate* |
|---|---|---|
| Security Guard | $28.02 | $42.02 |
| Supervisor | $32.34 | $48.51 |
| Site Manager | $40.58 | $60.86 |

Contractor must be in accordance with the Living Wage Ordinance within the City and County of San Francisco (CCSF). Information can be obtained on the Internet at http://sfgsa.org.

Building and Property Management
Security Guard Services RMGSOC 2015
3179570; Exhibit B Attachment 2; Page 1 of 2

## EXHIBIT B, ATTACHMENT 2

### EMPLOYEE BENEFITS COMPLIANCE REQUIREMENT

1. Contractor must comply with Government Code 19134 which requires the California Department of Human Resources (CalHR) to set the rates departments must pay to individuals they employ through personal services contracts for security guard services. The rates are set at 85% of the State's salary and benefit costs for State employees performing similar duties. "Benefits" includes health, dental, vision, holidays, sick leave, vacation, and retirement. Administrative, solely supervisory, or other support personnel are not covered.

2. The benefit rate is published by CalHR on February 2nd of each year and is effective until February 1st of the following year. If the rates should change during the contract period, contract will be amended to reflect the rate change with an effective date retroactive to the date of the rate changes. For purposes of this contract, the blended rate will apply. The rates effective February 2, 2015 are as follows:

| Classification | Hourly Wage | Blended Benefit Rate | Total Blended Rate |
|---|---|---|---|
| Security Guard | $10.87 | $8.75 | $19.62 |
| Lead Security Guard | $11.26 | $8.89 | $20.15 |

   http://www.calhr.ca.gov/state-hr-professionals/Pages/personal-services-contracts.aspx

3. Benefits/cash-in-lieu rates are calculated on a per-hour basis. Employees covered by GC19134 shall be paid applicable benefits or cash-in-lieu payments for each hour of service they perform on the contract (excluding overtime).

4. Compliance with this benefit provision may be accomplished by one of the following:
   A. Providing a benefit plan to the employees:
      (1) Contractors electing to provide actual benefits (vs. cash-in-lieu) to their employees must provide evidence of benefit coverage upon Notice of Intent to Award. Evidence shall consist of the name and address of the insurance company, insurance company telephone number or a signed statement on company letterhead that the Contractor is self-insured, or
   B. Cash equal to the blended rate, or
   C. Combination of a benefit plan and cash payments which together equal the blended rate.

   Contractor has complied with this provision by providing a combination of a benefit plan and cash payments which together equal the blended rate.

5. Contractor must submit a summary of the benefits or cash paid to employees with each invoice submitted to the State.  The summary must clearly document the following information:
   A. The number of employees who received benefits and/or cash payments
   B. The name of each employee who received benefits and/or cash payment.
   C. The number of hours each employee worked in the month.
   D. The amount paid to each employee for benefits and/or cash payments in the month.
   E. The total monthly cost of benefits and/or cash payments in the month.

6. Failure to comply with the provisions of GC19134 will be deemed a material breach of this contract, which may result in contract termination at the State's sole option.

7. This contract and all documents relating to the implementation of GC19134 are subject to audit by Building and Property Management, the Department of General Services, Bureau of State Audits, and/or the State or its designee.

## EXHIBIT D

### SPECIAL TERMS AND CONDITIONS

1. **STANDARD CONDITIONS OF SERVICE**
   A. Contractor will abide by all State and Federal laws in performance of this contract.
   B. The Contractor shall maintain all license(s) required by law for accomplishing any work required with this agreement. In the event any license(s) expire at any time during the term of this agreement, Contractor agrees to provide to the State a copy of the renewed license(s) within thirty (30) days following the expiration date. In the event the Contractor fails to keep in effect at all times all required license(s), the State may, in addition to any other remedies it may have, terminate this agreement upon occurrence of such event.
   C. The Contractor certifies that it has appropriate systems and controls in place to ensure that State funds will not be used in the performance of this Contract for the acquisition, operation or maintenance of computer software in violation of copyright laws.
   D. It is unlawful for a State Contractor to assist, promote, or deter union organizing by employees who are performing work on a service contract for the State or a State agency. This action is subject to fines in accordance with Government Code section 16645 et seq.
   E. If signing this contract as a sole proprietor, Contractor certifies that it is not an alien that is ineligible for state and local benefits, as defined in Subtitle B of the Personal Responsibility and Work Opportunity Act (8 U.S.C. § 1601 et seq.).
   F. Pursuant to Public Contract Code section 10295.4, persons or companies identified as the largest tax delinquents by the Franchise Tax Board (FTB) or the Board of Equalization (BOE) are ineligible to enter into any contract with the state for non-IT goods or services. Any contract entered into in violation of section 10295.4 is void and unenforceable.
   G. Contractor certifies eligibility pursuant to PCC 6101: No state agency or department, as defined in Section 10357, that is subject to this code, shall award a public works or purchase contract to a bidder or contractor, nor shall a bidder or contractor be eligible to bid for or receive a public works or purchase contract, who has, in the preceding five years, been convicted of violating a state or federal law respecting the employment of undocumented aliens.

2. **EXCISE TAX:** The State of California is exempt from Federal Excise Taxes, and no payment will be made for any taxes levied on employees' wages. The State will pay for any applicable State of California or local sales or use taxes on the services rendered or equipment or parts supplied pursuant to this agreement. California may pay any applicable sales or use tax imposed by another state.

3. **AGENCY LIABILITY:** The Contractor warrants by execution of this Agreement, that no person or selling agency has been employed or retained to solicit or secure this Agreement upon agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business. For breach or violation of this warranty, the State shall, in addition to other remedies provided by law, have the right to annul this Agreement without liability, paying only for the value of the work actually performed, or otherwise recover the full amount of such commission, percentage, brokerage, or contingent fee.

4. **RIGHT TO TERMINATE**

   A. The State reserves the right to cancel all or a portion of the service for any reason, subject to thirty (30) days written notice to the Contractor.
   B. This agreement can be immediately terminated for cause. The term "for cause" means that the Contractor fails to meet the terms, conditions, and/or responsibilities of the contract. In this instance, the contract termination shall be effective as of the date indicated on the State's notification to the Contractor.

5. **RESOLUTION OF CONTRACT DISPUTES**

   A. In the event of a dispute, Contractor will attempt resolution with the BPM Project Representative with a written explanation of the situation. If no resolution is found, Contractor shall file a "Notice of Dispute" with the Department of General Services within ten (10) days of the failed resolution at the following addresses:

   > Department of General Services, RESD
   > Attn: BPM Chief
   > 707 3rd Street, Suite 3-100
   > West Sacramento, CA 95605

   B. BPM Chief or designee shall meet with the Contractor for purposes of resolving the dispute. The decision of the BPM Chief or the designee shall be final. In the event of a dispute, the language contained within this agreement and its attendant Exhibits shall prevail over any other language.
   C. Neither the pendency of a dispute nor its consideration by the BPM Chief will excuse the Contractor from full and timely performance in accordance with the terms of the Agreement.

6. **INSURANCE REQUIREMENT**
   A. General Provisions Applying to All Policies
      1) Coverage Term – Coverage needs to be in force for the complete term of the contract. If insurance expires during the term of the contract, a new certificate must be received by the State at least thirty (30) days prior to the expiration of

Building and Property Management
Security Guard Services RMGSOC 2015
3179570; Exhibit D; Page 3 of 4

this insurance. Any new insurance must still comply to the original terms of the contract.

2) Policy Cancellation or Termination & Notice of Non-Renewal – Contractor is responsible to notify the State within 5 business days of any cancellation, non-renewal or material change that affects required insurance coverage. In the event Contractor fails to keep in effect at all times the specified insurance coverage, the State may, in addition to any other remedies it may have, terminate this Contract upon the occurrence of such event, subject to the provisions of this Contract.

3) Deductible – Contractor is responsible for any deductible or self-insured retention contained within their insurance program.

4) Primary Clause – Any required insurance contained in this contract shall be primary, and not excess or contributory, to any other insurance carried by the State.

5) Insurance Carrier Required Rating – All insurance companies must carry a rating acceptable to the Office of Risk and Insurance Management. If the Contractor is self insured for a portion or all of its insurance, review of financial information including a letter of credit may be required.

6) Endorsements – Any required endorsements requested by the State must be physically attached to all requested certificates of insurance and not substituted by referring to such coverage on the certificate of insurance.

7) Inadequate Insurance – Inadequate or lack of insurance does not negate the contractor's obligations under the contract.

B. Commercial General Liability – Contractor shall maintain garage liability on an occurrence form with limits not less than $1,000,000.00 per occurrence for bodily injury and property damage liability combined with a $2,000,000.00 annual policy aggregate. The policy shall include coverage for liabilities arising out of premises, operations, independent contractors, products, completed operations, personal and advertising injury, and liability assumed under an insured contract. This insurance shall apply separately to each insured against whom claim is made or suit is brought subject to the Contractor's limit of liability.

1) **The policy must be endorsed to include the State of California, its officers, agents, employees and servants as additional insured, but only with respect to work performed under the contract. The additional insured endorsement shall be provided with the certificate of insurance.**

C. Commercial Automobile Insurance – Contractor shall maintain motor vehicle liability with limits not less than $1,000,000.00 combined single limit per accident. Such insurance shall cover liability arising out of a motor vehicle including owned, hired and non-owned motor vehicles.

1) The policy must be endorsed to include the State of California, its officers, agents, employees and servants as additional insured, but only

**with respect to work performed under the contract. The additional insured endorsement shall be provided with the certificate of insurance.**

D. Workers Compensation and Employer's Liability – Contractor shall maintain statutory worker's compensation and employer's liability coverage for all its employees who will be engaged in the performance of the Contract. Employer's liability limits of $1,000,000.00 are required. The Workers' Compensation policy shall be endorsed with a waiver of subrogation in favor of the State.

E. Certificate of Insurance
   1) The Contractor shall furnish a Certificate of Insurance. The Certificate of Insurance will provide the above listed liability coverages and the Certificate Holder shall read:

Attn:  CMS – 3179570
Department of General Services
Office of Business and Acquisition Services
707 Third Street, Suite 2-350, MS 508
West Sacramento, CA 95605
